AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone 11, SN FFXH36NGN72J; Apple iPhone 12<br>Pro Max, SN F2LG4BZR0D3Y; Apple iPhone Xr, SN<br>DX3G2193KXKQ;Apple iPhoneSE, SN FFMH718NPLJM | ) ) ) ) ) ) | Case No.  6:22cm22 |

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Oct 20, 2022

OFFICE OF THE CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
An Apple iPhone 11, SN FFXH36NGN72J; Apple iPhone 12 Pro Max, SN F2LG4BZR0D3Y; Apple iPhone Xr, SN DX3G2193KXKQ; & Apple iPhone SE, SN FFMH718NPLJM, further described in attachment A.

located in the _____ Western _____ District of _____ Arkansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Described in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1); | - Distribution of a Controlled Substance (Methamphetamine) |
| 21 USC 846; | - Conspiracy to Distribute a Controlled Substance (Methamphetamine) |
| 18 USC 1956(a)(1) | - Laundering of Monetary Instruments |

The application is based on these facts:

See attached Affidavit in Support of An Application for Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Joshua Laster (telephonically)
*Applicant's signature*

SA JOSHUA LASTER, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10-20-22

City and state:  ~~Hot Springs, AR~~ Texarkana

*Judge's signature*

United States Magistrate Judge Barry A. Bryant
*Printed name and title*

UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
ARKANSAS HOT SPRINGS
DIVISION

| | |
|---|---|
| In the Matter of the Search of:<br>A black Apple iPhone 11, Serial Number<br>FFXH36NGN72J, Assigned Telephone<br>Number 501-547-4383; A silver Apple<br>iPhone 12 Pro Max, Serial Number<br>F2LG4BZR0D3Y, Assigned Telephone<br>Number 501-282-7342; A red Apple<br>iPhone Xr, Serial Number<br>DX3G2193KXKQ, Assigned Telephone<br>Number 501-538-0254; and a black Apple<br>iPhone SE, Serial Number<br>FFMH718NPLJM, No Assigned<br>Telephone Number | Case No.   6:22cm22 _____ |

## AFFIDAVIT

I, Joshua Laster, a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), hereby depose and state that the following is true and correct upon my personal knowledge, investigation, and belief.

## AFFIANT EXPERIENCE

1.      Your Affiant makes this affidavit in support of an application for a search warrant for evidence of narcotics trafficking from the following cellular telephones that are currently located at the Drug Enforcement Administration (DEA) Little Rock District Office (LRDO):

- A black Apple iPhone 11, serial number FFXH36NGN72J, telephone number 501-547-4383 (hereinafter referred to as "**TARGET PHONE 1**") belonging to ALEXIS VEGA-HUESO;

- A silver Apple iPhone 12 Pro Max, serial number F2LG4BZR0D3Y, telephone number 501-282-7342 (hereinafter referred to as "**TARGET PHONE 2**") belonging to AMERICA VEGA-HUESO;

- A red Apple iPhone Xr, serial number DX3G2193KXKQ, telephone number 501-538-0254, (hereinafter referred to as "**TARGET PHONE 3**") belonging to JAIME DIAZ;

- A black Apple iPhone SE, serial number FFMH718NPLJM, no telephone number assigned (hereinafter referred to as "**TARGET PHONE 4**") belonging to JAIME DIAZ.

2.     I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Little Rock District Office, Arkansas. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3.     I have been a Special Agent with the DEA since 2011.  Since my employment with the DEA, I have conducted and/or participated in several drug-trafficking investigations regarding the activities of drug trafficking organizations (DTOs).  During these investigations, I have been involved in seizures of marijuana, methamphetamine, cocaine, bulk United States currency, as well as the collection of other evidence relating to particular drug-trafficking violations.  In addition, I have established and supervised confidential sources, prepared and executed search warrants and arrest warrants, conducted physical surveillance, made probable cause arrests, prepared complaints, and testified before a Grand Jury.  I have also participated in investigations regarding court-authorized interceptions of wire and electronic communications of drug traffickers and have conducted phone toll analysis on such drug traffickers.  I also have participated in and

coordinated controlled deliveries of controlled substances resulting in arrests of multiple defendants. I have also participated in drug investigations involving the simultaneous possession of drugs and firearms.

4.        Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug-trafficking distribution networks. I am familiar with coded language that drug traffickers use during telephone conversations to disguise their illegal activities and the manner in which they conduct these illegal activities. During the course of my official duties, I have prepared and assisted other law enforcement officers in the preparation of various search warrants, arrest warrants, and criminal complaints.

5.        In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to Title 21, United States Code, Sections 841, 843, 846, 848, and 860; money laundering laws, including Title 18, United States Code, Sections 1956 and 1957; and firearm laws, including Title 18, United States Code, Sections 922 and 924(c), in addition to other violations.

6.        Prior to my employment with the DEA, I served seven (7) years as a police officer in the state of Arkansas. My responsibilities as a police officer were responding to calls of service; investigating traffic accidents; enforcing local, state and federal laws; preparing reports and affidavits; apprehending wanted subjects; and executing arrest and search warrants. I also made numerous misdemeanor and felony arrests for violations of controlled substances.

7.        The information contained in this Affidavit is based upon information learned during the investigation by myself and other law enforcement officers into the drug-trafficking activities of ALEXIS VEGA-HUESO, AMERICA VEGA-HUESO, and JAIME DIAZ to include:

law enforcement reports, records and interviews; information received from other law enforcement agents; my experience and training; and the experience of other agents. This investigation is being conducted by the DEA Little Rock District Office (LRDO) and the Hot Springs Police Department (HSPD) which includes information derived from public source documents, criminal databases, the Arkansas Crime Information Center (ACIC), and the National Crime Information Center (NCIC).

8.      Based on the facts outlined below, there is probable cause to believe the above-referenced Target Phones were being used in furtherance of drug trafficking and money laundering and a search of the Target Phones will provide information in regard to the fruits, and instrumentalities of drug trafficking and money laundering, as well as to the identification of individuals who are engaged in the commission of drug trafficking and related crimes. The information presented in this Affidavit is intended to demonstrate probable cause and does not set forth all of the information you Affiant has become familiar with in this investigation.

## PROBABLE CAUSE

9.      In January 2022, agents/Task Force Officers (TFOs) with the DEA Little Rock District office developed and interviewed a confidential source (CS) who provided information regarding a young Hispanic male, later identified as JAIME DIAZ, and a young Hispanic female, later identified as AMERICA VEGA-HUESO (AMERICA VEGA), in Hot Springs, AR distributing kilogram quantities of methamphetamine. The CS admitted to meeting with DIAZ on one occasion in December 2021 and another occasion in January 2022 to acquire approximately a half of a kilogram of methamphetamine (meth) each time. The CS provided telephone number 501-282-7342 to agents/TFOs as a telephone number he/she called to arrange the meth transactions with DIAZ and AMERICA VEGA in Hot Springs. After the transactions were arranged, the CS

stated he/she met DIAZ in the parking lot of the Waffle House located at 2017 Central Ave., Hot Springs, AR.

10.     In February 2022, your Affiant submitted an administrative subpoena to AT&T requesting detailed telephone and toll records on telephone 501-282-7342. Your Affiant later received records from AT&T in response to the administrative subpoena regarding telephone number 501-282-7342 which showed to be subscribed to "America Vega Hueso" with an address of 612 Laser Street, Hot Springs, AR. Your Affiant confirmed through a driver's license return obtained from ACIC and other DEA indices that AMERICA VEGA had a listed address at 612 Laser Street, Hot Springs, AR.  It was also learned that ALEXIS VEGA, later identified as AMERICA VEGA's brother, was reported to reside at 612 Laser Street, Hot Springs, AR. AMERICA VEGA's Arkansas Driver's License return also listed ALEXIS VEGA as her emergency contact and his emergency telephone number as 501-547-4383.

11.     On February 25, 2022, your Affiant and TFOs met with the CS at a neutral location to arrange a controlled purchase of meth from AMERICA VEGA and or DIAZ in Hot Springs, AR for the following week.  At approximately 10:40 a.m., your Affiant directed the CS to place a recorded telephone call to 501-282-7342 to arrange the purchase of half of a kilogram of meth in the presence of your Affiant.  A female, believed to be AMERICA VEGA answered and greeted the CS. After greeting the CS, AMERICA VEGA transferred the telephone to a male believed to be DIAZ and the CS then began communicating with DIAZ.  The CS then arranged to purchase a half of a kilogram (500 grams) of meth from DIAZ the following week.  DIAZ advised the half kilogram of meth would cost $3,500 but the CS negotiated the price of $3,250 in which DIAZ agreed, stating, "I got you." The CS informed DIAZ that he/she would contact DIAZ the following

Monday (February 28, 2022) to coordinate the meeting to purchase the half kilogram of meth in Hot Springs and DIAZ acknowledged.

12.     On February 28, 2022, your Affiant and TFOs met the CS at a neutral location in Hot Springs, AR.  Upon meeting the CS, the CS and the CS's vehicle were searched for contraband with negative results.  At approximately 2:03 p.m., your Affiant directed the CS to place a recorded telephone call to telephone number 501-282-7342 to follow up with the conversation that took place on February 25, 2022, and arrange to meet DIAZ to complete the purchase of a half kilogram of meth.  AMERICA VEGA answered the phone and asked the CS if he/she needed to speak to her husband (DIAZ).  DIAZ asked the CS where he/she was located, and the CS informed he/she was in Hot Springs. AMERICA VEGA indicated that she would call the CS back and the phone call ended.

13.     At approximately 2:13 p.m., the CS received a telephone call from DIAZ using telephone number 501-538-0254.  Your Affiant later obtained a subscriber report from AT&T in response to an administrative subpoena regarding telephone number 501-583-0254 which showed it to be subscribed to "Jaime Diaz."  DIAZ stated, "My girl gave me your number, you was calling about that stuff but she's at work."  DIAZ then asked, "How much do you need?"  The CS indicated that he/she previously arranged to purchase a half of a kilogram for $3,250.  The CS also indicated that he/she was already in Hot Springs and asked if they were going to meet at the Waffle House.  DIAZ indicated he had to call a third party and would call the CS back.

14.     At approximately 2:33 p.m., the CS received a telephone call from DIAZ using telephone number 501-538-0254.  DIAZ indicated that he was going to pick up the requested amount of meth and meet the CS at the Waffle House in approximately 25 minutes.  Following the telephone call, the CS was provided with $3,250 in pre-recorded Official Advanced Funds (OAF)

and an audio/video recording device to utilize during the transaction.  At approximately 2:56 p.m., the CS departed the neutral location, followed by your Affiant and other agents, and traveled to the Waffle House located at 2017 Central Ave., Hot Springs, AR. At approximately 4:05 p.m., agents observed a black Chrysler 200 park next to the CS's vehicle at the Waffle House.  Agents later observed Arkansas registration 153ZPJ displayed on the rear of the black Chrysler 200 which was registered to Juan DIAZ at 155 Fletcher Lane, Bismarck, AR 71929.  At approximately 4:07 p.m., the CS and DIAZ departed the Waffle House.  Your Affiant reunited with the CS at a neutral location who relinquished custody of a black plastic bag that contained loose shards of an off-white crystalline substance believed to be meth.  Your Affiant conducted a presumptive field test of the substance which indicated the presence of meth.  The half kilogram of suspected meth was submitted to a DEA laboratory for analysis which is still pending.

15.     On April 4, 2022, your Affiant met with the CS at a neutral location and directed the CS to place a recorded telephone call to AMERICA VEGA at telephone number 501-282-7342 to arrange a half-kilogram of meth, but the call was unanswered.  The CS later reported on the same day that he/she received a telephone call from DIAZ using telephone number 501-282-7342.  According to the CS, DIAZ advised that he had to travel to an unknown location to acquire a re-supply of meth and would be available to distribute meth on the following day, April 5, 2022. On April 5, 2022, your Affiant met with the CS at a neutral location and directed the CS to place multiple calls and text messages to telephone number 501-282-7342 with no response.  On April 8, 2022, the CS reported that he/she received a telephone call from DIAZ using telephone number 501-282-7342 and indicated that he had meth to distribute to the CS.  On April 11, 2022, the CS reported that he/she received a call from DIAZ and the CS informed DIAZ that he/she would be available to meet the following day, April 12, 2022.

16.     On April 12, 2022, at approximately 10:21 a.m., the CS notified your Affiant that he/she received a phone call from DIAZ using telephone 501-282-7342 and arranged to meet DIAZ at approximately 2:00 p.m. in Hot Springs, AR.  The CS later reported that DIAZ contacted him/her again and instructed the CS to meet at the Sam's Club located at 1368 Higdon Ferry Road, Hot Springs, AR.  All calls and text messages between the CS and DIAZ that were not in the presence of law enforcement were either confirmed through a later inspection of the CS's cell phone or through toll analysis of telephone number 501-282-7342. At approximately 1:30 p.m., your Affiant and HSPD investigators met the CS at a neutral location in Hot Springs, AR.  The CS and the CS's vehicle were searched for contraband with negative results.  At 1:42 p.m., the CS placed a recorded telephone call to telephone number 501-282-7342 that was answered by AMERICA VEGA.  The CS informed AMERICA VEGA that he/she was approximately 10 minutes from the Sam's Club and AMERICA VEGA indicated that DIAZ was on his way.  Following the phone call with AMERICA VEGA, the CS was provided with $3,250 in pre-recorded DEA OAF and an audio/video recording device to utilize during the purchase.  At approximately 1:52 p.m., the CS departed the neutral location and traveled to the Sam's Club followed by your Affiant and HSPD investigators.

17.     At approximately 2:23 p.m., law enforcement observed DIAZ's black Chrysler 200 bearing Arkansas registration 153ZPJ arrive and park in the southwest section of the Sam's Club parking lot.  Moments later, law enforcement observed DIAZ, AMERICA VEGA (wearing a blue T-shirt), and an unidentified Hispanic female wearing a white T-shirt exit the vehicle.  All three subjects went to the back of the vehicle where a black rolling cart was retrieved from the trunk.  The unidentified Hispanic female wearing the white T-shirt was observed entering into the Sam's Club with the black cart and both DIAZ and AMERICA VEGA re-entered the black Chrysler 200.

Law enforcement then observed the black Chrysler 200 travel to the west parking lot of the Sam's Club and park next to the CS's vehicle. At approximately 2:26 p.m., your Affiant observed the CS exit his/her vehicle and enter into the rear passenger door of DIAZ's vehicle. At approximately 2:28 p.m., your Affiant observed the CS exit DIAZ's carrying a blue and white cylindrical shaped container and re-enter his/her vehicle. At the same time, DIAZ's pulled away from CS1's vehicle and relocated to the southwest parking lot where it was originally parked. Other agents later observed both DIAZ and AMERICA VEGA exit the vehicle and walk inside the Sam's Club.

18. At approximately 2:30 p.m., the CS departed the Sam's Club and traveled to the neutral location followed by your Affiant and HSPD Investigators. At approximately 2:41 p.m., your Affiant reunited with the CS at the neutral location where the CS relinquished custody of a blue and white cylindrical shape Gerber baby formula container. Your Affiant examined the contents of the container and found three clear plastic bags containing a white crystalline substance believed to be meth. Your Affiant conducted a presumptive field test of the substance in one of the bags that indicated the presence of meth. Accumulative weight of all three bags was approximately 502.4 grams. The CS and the CS's vehicle were searched again for contraband with negative results. Your Affiant debriefed the CS who stated when he/she entered into DIAZ's vehicle, the Gerber baby formula container was already sitting on the console between the two front seats. The CS stated he/she handed the $3,250 in DEA OAF to DIAZ and then took the Gerber baby formula container from the console. The CS stated DIAZ counted the DEA OAF and once he confirmed there was $3,250, the CS exited the vehicle. Your Affiant later processed the suspected meth as evidence and shipped it to a DEA Laboratory for analysis which is still pending. At approximately 2:48 p.m., DIAZ, AMERICA VEGA, and the unidentified Hispanic female wearing the white T-shirt exited the Sam's Club with groceries and placed them in the trunk of

DIAZ's vehicle.  At approximately 2:53 p.m., all three departed the Sam's Club in DIAZ's vehicle and traveled to 230 Manor Circle.  The unidentified Hispanic female wearing the white T-shirt was observed exiting DIAZ's vehicle and entering into apartment 18.  Moments later, agents observed ALEXIS VEGA wearing a maroon T-shirt sitting in the front passenger seat of DIAZ's vehicle.  The unidentified Hispanic female wearing the white T-shirt later exited apartment 18 and re-entered the black Chrysler 200.  At approximately 3:10 p.m., the black Chrysler 200 departed 230 manor Circle and traveled to the Wal-Mart Supercenter located at 4019 Central Ave.  Upon arrival, your Affiant observed DIAZ, AMERICA VEGA, ALEXIS VEGA, and the unidentified Hispanic female wearing the white T-shirt enter inside the Wal-Mart Supercenter.

19.     On June 1, 2022, your Affiant met with the CS at a neutral location in Little Rock, AR and at approximately 12:38 p.m., directed the CS to place a call to 501-282-7342 to arrange a purchase of meth but the call was not answered.  At approximately 12:39 p.m., the CS received a return call from AMERICA VEGA using telephone number 501-282-7342, that was recorded. Upon the CS answering the telephone, AMERICA VEGA asked, "Yes, you need something" and, "How many do you need," meaning she was asking how much meth the CS wanted to purchase. The CS informed AMERICA VEGA that he/she only had $2,000 to use to purchase meth and wanted to know how much meth he/she would receive for $2,000.  AMERICA VEGA could be heard talking in Spanish to a third party in the background and then asked the CS again how much money he/she had.  The CS reiterated that he/she had $2,000.  AMERICA VEGA could be heard talking in Spanish to a third party in the background again then asked the CS, "She say, are you coming over here or she say go over there?  Based on AMERICA VEGA's response, I believe that AMERICA was arranging or confirming the purchase of meth with another third-party female that AMERICA VEGA was acquiring meth from.  The CS informed AMERICA VEGA that he/she

could meet at the Waffle House in Hot Springs (2017 Central Ave.) in approximately two hours. AMERICA VEGA acknowledged, and the CS ended the phone call. Based on your Affiant's experience and knowledge of current meth prices, your Affiant believed that the CS would acquire approximately eight (8) ounces of meth for $2,000, paying $250 per ounce.

20.    At approximately 2:15 p.m., your Affiant, SA Kolton Lane, and HSPD investigators met the CS at a neutral location in Hot Springs, AR. The CS and the CS's vehicle were searched for contraband. Your Affiant and SA Kolton Lane located a Marlboro cigarette box that contained a small plastic bag of suspected meth inside weighing approximately three grams. The suspected meth was transferred to HSPD investigators as evidence and maintained in HSPD evidence per their policies and procedures. At approximately 2:26 p.m., the CS placed a recorded telephone call to 501-282-7342 which was answered by DIAZ. The CS informed DIAZ that he/she was nearing Hot Springs and asked where they wanted to meet. DIAZ suggested to meet at the Waffle House and the CS acknowledged. The CS informed DIAZ that he/she would be there in approximately 10 to 15 minutes and DIAZ acknowledged. Following the phone call, the CS was provided with $2,000 in pre-recorded DEA OAF and an audio/video recording device to utilize during the purchase. At approximately 2:32 p.m., the CS departed the neutral location and traveled to the Waffle House located at 2017 Central Ave., Hot Springs, AR. Surveillance was established in the area of 503 Laser Street, the area of the Waffle House, as well as in the area of 230 Manor Circle, Apartment 18. At approximately 2:40 p.m., your Affiant observed DIAZ's vehicle traveling west on Laser Street away from 503 Laser Street towards Central Ave. At approximately 2:41 p.m., law enforcement observed DIAZ's vehicle arrive at 230 Manor Circle and park in the parking area below apartments 13-18. Law enforcement later observed a young Hispanic female approach DIAZ's vehicle and conduct what appeared to be a hand-to-hand exchange of an object through

the window of the vehicle. The female then walked away from DIAZ's vehicle and walked up to apartment 18 and entered inside the apartment. At approximately 2:47 p.m., DIAZ's vehicle departed the parking lot at 230 Manor Circle and traveled directly to 2017 Central Ave., arriving at approximately 2:49 p.m.

21.     Upon DIAZ's vehicle arriving at 2017 Central Ave., the CS exited his/her vehicle and entered into the rear driver's side door of DIAZ's vehicle, making contact with DIAZ (driver) and AMERICA VEGA (front passenger). The CS advised that he/she only had $2,000 and DIAZ acknowledged. The CS asked DIAZ how much meth he/she was receiving, and DIAZ indicated it was "about eight," meaning eight ounces. DIAZ informed the CS that he got the meth from someone else (believed to be the female from 230 Manor Circle, Apartment 18) and that if it was short to let him know and he would tell "his guys." The CS acknowledged, exited DIAZ's vehicle, and re-entered his/her vehicle. At approximately 2:52 p.m., the CS departed 2017 Central Ave. and traveled back to the neutral location. At approximately the same time, DIAZ's vehicle departed 2017 Central Ave. and conducted a counter surveillance technique commonly referred to as a "heat-run" in order to detect if he was being followed by law enforcement before returning directly back to 230 Manor Circle. At approximately 2:54 p.m., DIAZ's vehicle arrived at 230 Manor Circle and parked below apartments 13-18. Law enforcement observed the same Hispanic female as before, exit apartment 18 and approach DIAZ's vehicle. The female visited with DIAZ for a moment and then returned to apartment 18. At approximately 2:56 p.m., DIAZ departed 230 Manor Circle and traveled north on Central Ave. Based on physical surveillance, your Affiant's training and experience, and DIAZ conducting a "heat-run," your Affiant believed that DIAZ returned back to 230 Manor Circle to provide the

female with either all or a partial amount of the DEA OAF that was obtained from the CS during the controlled purchase.

22.     At approximately 2:56 p.m., your Affiant and agents reunited with the CS at the neutral location.  Upon arrival, the CS relinquished custody of a white plastic bag.  Inside that bag was another clear plastic bag that contained a white crystalline substance believed to be meth. Your Affiant conducted a presumptive field test of the substance which tested positive indicating the presence of meth.  Your Affiant and SA Lane searched the CS and the CS's vehicle for contraband with negative results.  Your Affiant also weighed the meth and determined it to be approximately 150 grams.  Your Affiant later processed the meth as DEA evidence and submitted it to a DEA laboratory for analysis which is still pending. Your Affiant instructed the CS to contact DIAZ and inform him that he/she only received 150 grams (approximately 5.3 ounces) instead of eight ounces.  At approximately 4:27 p.m., the CS spoke to DIAZ and DIAZ explained that the female (believing he was referring to the female from 230 Manor Circle, Apartment 18) gave him the wrong bag of meth to provide to the CS. DIAZ informed the CS that he could meet the CS on a later date and provide him/her with the shorted amount of meth.  The CS later attempted to contact DIAZ to arrange a subsequent meeting, but DIAZ and AMERICA VEGA failed to answer the CS's telephone calls and text messages.

23.     On August 29, 2022, at approximately 1:52 p.m., your Affiant met with the CS at a neutral location and directed the CS to make a recorded telephone call to AMERICA VEGA or DIAZ at telephone number 501-282-7342 with no answer.  Following the phone call, the CS received a text message from 501-282-7342 stating, "Hi how are you. You need?"  The CS indicated in a reply text message that he/she wished to get what was owed from the June 1, 2022, controlled purchase and asked what a half of a kilogram would cost.  The CS then received a text

message from 501-282-7342 indicating that if the CS had the money, they would sell the half kilogram to him/her. The CS asked in a reply text message if he/she could meet today and the CS received a text message stating, "Yes." The CS sent a text message informing that he/she could meet at 4:00 p.m. at the Waffle House located at 2017 Central Ave. in Hot Springs. The CS then received a reply text message stating, "It's going to be 4,000 the work went up." Based on this context of this investigation and your Affiant's experience, your Affiant believes that either AMERICA VEGA or DIAZ meant that the price of meth has increased and that a half kilogram of meth now costs $4,000 as opposed to $3,250 which was the cost of a half-kilogram of meth in previous controlled purchases from DIAZ. The CS indicated that he/she only had $3,000 to spend towards meth and inquired again about DIAZ owing three ounces from the June 1, 2022, controlled purchase. The CS then received a reply message stating, "I'll give it to you for 3,000 n I won't owe you nothing deal." I believe that either DIAZ or AMERICA VEGA meant that they would supply the CS with a half of kilogram of meth for $3,000 and that would make up the difference that was owed from the June 1, 2022, controlled purchase. The CS acknowledged and then received a reply text stating, "You coming today? From now on we going to work good." The CS was directed to reply that he/she could meet DIAZ at approximately 4:00 p.m. and this concluded the text message conversation with 501-282-7342.

24.     At approximately 3:09 p.m., your Affiant and SA Kolton Lane met with the CS at the Little Rock District Office and transported the CS to a neutral location in Hot Springs. At approximately 3:49 p.m., while traveling to Hot Springs, the CS received a telephone call from DIAZ using telephone number 501-282-7342 which was recorded. DIAZ asked the CS when he/she was going to arrive in Hot Springs. The CS informed DIAZ that he/she would be in Hot Springs in approximately 30 minutes. DIAZ acknowledged and the phone call ended. At

approximately 4:15 p.m., your Affiant, SA Lane, and the CS arrived at a neutral location in Hot Springs. The CS was searched for contraband with negative results. The CS was then supplied with $3,000 in DEA OAF and an audio/video recording device to utilize during the controlled purchase from DIAZ. At approximately 4:31 p.m., the CS was transported to the Waffle House by a HSPD undercover (UC) officer in a HSPD UC vehicle. At approximately 4:31 p.m., the CS received a telephone call from DIAZ using 501-282-7342. DIAZ asked where the CS was located, and the CS stated he/she would arrive at the Waffle House in approximately five minutes. DIAZ acknowledged.

25.     At approximately 4:31 p.m., the CS and the UC departed the neutral location and traveled to the Waffle House at 2017 Central Ave., Hot Springs, AR, arriving at approximately 4:36 p.m. At approximately 4:43 p.m., TFO McClain observed DIAZ exit 503 Laser Street carrying a small gray bag and entered into the white Chevrolet Cruze. Moments later, AMERICA VEGA exited 503 Laser Street and entered into the front passenger door of the white Chevrolet Cruze. At approximately 4:45 p.m., the white Chevrolet Cruze departed 503 Laser Street. At approximately 4:47 p.m., your Affiant observed both ALEXIS VEGA's and DIAZ's vehicle parked next to each other at the intersection of Central Ave. and Laser Street, talking to each other through the driver's door windows. At 4:49 p.m., TFO McClain observed DIAZ return and enter into 503 Laser Street by himself. It appeared that AMERICA VEGA remained in the white Chevrolet Cruze. At approximately 4:52 p.m., DIAZ exited 503 Laser Street and re-entered into the white Chevrolet Cruze and departed 503 Laser Street. At approximately the same time, the CS received a text message from 501-282-7342 asking the description of his/her vehicle. At approximately 4:54 p.m., DIAZ arrived at the Waffle House and the CS entered into DIAZ's vehicle. At approximately 4:58 p.m., the CS exited DIAZ's vehicle and re-entered the UC vehicle.

The UC then drove the CS back to the neutral location and where your Affiant re-united with the CS. The CS then relinquished custody of a gray plastic Wal-Mart grocery sack that contained a clear plastic bag with suspected meth inside. Your Affiant conducted a presumptive field test on the suspected meth which indicated the presence of meth. The suspected meth was weighted and determined to be approximately 506 grams. Your Affiant debriefed the CS who stated upon entering the white Chevrolet Cruze, the CS made contact with DIAZ and DIAZ discussed owing the CS three ounces. DIAZ informed the CS that he did not get it and indicated that the meth that was provided to the CS on June 1, 2022, came from someone else. This conversation was later confirmed through a review of the audio/video recording device. Then he/she provided the $3,000 in DEA OAF to DIAZ and DIAZ then transferred the money to AMERICA VEGA who counted out the money. The CS stated DIAZ then supplied him/her with the gray Wal-Mart sack containing the half kilogram of suspected meth. Afterwards, the CS exited the white Chevrolet Cruze and re-entered the UC vehicle.

26.     At approximately 4:58 p.m., DIAZ and AMERICA VEGA departed the Waffle House in the white Chevrolet Cruze and agents lost surveillance of the white Chevrolet Cruze. At approximately 5:07 p.m., TFO McClain observed that AMERICA VEGA was dropped off by ALEXIS VEGA in the dark blue Chevrolet Malibu. Based on this, it is believed that DIAZ and AMERICA VEGA met up with ALEXIS VEGA following the controlled purchase. AMERICA VEGA was observed walking inside 503 Laser Street. ALEXIS VEGA was then observed departing 503 Laser Street at approximately 5:08 p.m., and returned to 230 Manor Circle, Apartment 18 at approximately 5:11 p.m. Based on the above observations and the CS's statement of AMERICA VEGA counting the DEA OAF, your Affiant believes that AMERICA VEGA provided ALEXIS VEGA with the OAF who possibly had it in his possession upon returning to

230 Manor Circle, Apartment 18. At approximately 5:34 p.m., DIAZ arrived back at 503 Laser Street in the white Chevrolet Cruze.

27.     On September 6, 2022, the Honorable Barry A. Bryant, United States Magistrate Judge of the Western District of Arkansas, authorized search warrants for 503 Laser Street, Hot Springs, AR (the residence of DIAZ and AMERICA VEGA) and 230 Manor Circle, Apartment 18, Hot Springs, AR (the residence of ALEXIS VEGA).   On September 9, 2022, DEA LRDO agents/TFOs and HSPD officers/investigators executed the aforementioned search warrants. During the execution of the search warrant at 230 Manor Circle, Apt. 18, agents detained ALEXIS VEGA and his girlfriend, Sandra DIAZ (Jaime DIAZ's sister), inside the apartment.   A search revealed black Taurus G3C 9mm semi-automatic handgun, ammunition, $6,670 in U.S. currency, and TARGET PHONE 1.   Law enforcement also located various sandwich style plastic bags, plastic grocery sacks, three electronic scales, and a clear plastic food container containing suspected methamphetamine residue in the oven inside the apartment which is indicative of packaging and selling narcotics. ALEXIS VEGA was detained and later transported to the HSPD for an interview.

28.     Your Affiant later interviewed ALEXIS VEGA at the HSPD and advised ALEXIS VEGA of his rights per a DEA-13b (Spanish Advise of Rights Form).   ALEXIS VEGA read the form and stated he understood his rights and would answer agent's questions without an attorney present.   During the interview, ALEXIS VEGA admitted to distributing methamphetamine and identified his source of supply from Mexico as Jose Luis CHAVEZ-LOYA.   ALEXIS VEGA stated that he would receive kilogram shipments of methamphetamine from couriers from Texas that were coordinated by CHAVEZ-LOYA. Once he received the methamphetamine, he would distribute one kilogram at a time to a customer in the Little Rock, AR area.   He added, he retained

ounce quantities of methamphetamine that were received from the courier so he could distribute ounce quantities of methamphetamine to customers in Hot Springs, AR. Also, during the interview, your Affiant asked ALEXIS VEGA for consent to search TARGET PHONE 1. ALEXIS VEGA granted consent and signed a DEA-88a (Spanish Consent to Search Form) authorizing your Affiant to search his cell phone. ALEXIS VEGA provided "000000" as the passcode to unlock TARGET PHONE 1. ALEXIS VEGA also identified the telephone number 501-547-4383 as the telephone number assigned to TAREGT PHONE 1. During the search of TARGET PHONE 1, your Affiant noticed several text message conversations with suspected meth customers, as well as JOSE LUIS LOYA-CHAVEZ, regarding the acquisition and sale of meth. ALEXIS VEGA also identified the courier's telephone number, JOSE LUIS LOYA-CHAVEZ's telephone number, and his customer's telephone numbers that were either saved in a text message conversation, in his saved contacts, or in his call log history. Following the interview with ALEXIS VEGA, your Affiant maintained possession of TARGET PHONE 1 and processed it as evidence, storing at the LRDO Non-Drug Evidence Vault. Your Affiant also enable the airplane mode on TARGET PHONE1 and stored TARGET PHONE in protective Mylar case to prevent TARGET PHONE 1 from being remotely erased.

29.     During the execution of the search warrant at 503 Laser Street, agents located approximately 140 pounds of suspected marijuana in the northwest living room and in DIAZ's disabled black Chrysler 200 in the driveway, a Berretta 9mm semi-automatic handgun, a Glock Model 45 9mm semi-automatic handgun, and a Smith and Wesson .38 special revolver, various small baggies containing pills, suspected cocaine, and suspected methamphetamine located in DIAZ's and AMERICA VEGA's bedroom. Agents later discovered that the Smith and Wesson .38 special revolver located in DIAZ's and AMERICA VEGA's bedroom was reported stolen by

the HSPD.  Agents also located $11,700 in U.S. currency of suspected drug proceeds in DIAZ's

and AMERICA VEGA's bedroom.  Agents also located TARGET PHONE 2, TARGET PHONE

3, and TARGET PHONE 4 inside DIAZ's and AMERICA VEGA's bedroom. Both DIAZ and

AMERICA VEGA were later transported to the HSPD for interviews.

30.     You Affiant later interviewed DIAZ at the HSPD and advised him of his rights per

a DEA-13 (Advise of Rights Form).  DIAZ stated he understood his rights and agreed to answer

agent's questions without an attorney present.  DIAZ admitted ownership of the marijuana and

stated it all came from one source of supply.  DIAZ indicated that he had his marijuana source of

supply's telephone number saved in TARGET PHONE 3.  Your Affiant asked DIAZ for consent

both TARGET PHONE 3 and TARGET PHONE 4 per a DEA-88 (Consent to Search Form) and

DIAZ gave consent for both.  DIAZ identified telephone number 501-538-0254 as the telephone

number assigned to TARGET PHONE 3 and stated that TARGET PHONE 4 is an older phone

that he previously utilized with the same telephone number.  DIAZ provided passcode "199507"

as the passcode to unlock both TARGET PHONE 3 and TARGET PHONE 4.  During the search

of TARGET PHONE 3, your Affiant located several saved text message conversations regarding

the acquisition and sale of narcotics to multiple individuals.  DIAZ also identified the telephone

number 501-693-5062, which was saved in his call log history, as his source of supply for

marijuana.  DIAZ also stated he acquired meth from JOSE LUIS LOYA-CHAVEZ and stated that

he is AMERICA VEGA's stepfather. DIAZ also identified Mexico based telephone number 52-

663-123-9978 that was stored in his cellphone as "Jose" as LOYA-CHAVEZ's telephone number.

Your Affiant examined a saved What's App conversation with LOYA-CHAVE, associated to

Mexico based telephone number 52-663-123-9978, that contained conversation regarding the sale

and acquisition of methamphetamine.  DIAZ stated he would acquire kilogram quantities of

methamphetamine from a courier from Texas.  He added the meth shipments from Texas were coordinated by LOYA-CHAVEZ.  DIAZ explained that he stopped selling meth approximately five to six months ago and started distributing marijuana because the legal consequences would be less than distributing meth.  DIAZ stated that money he acquired from meth sales were wired electronically to recipients in Mexico.

31.     DIAZ also identified approximately four other telephone numbers that were associated to conversations saved in What's App in TARGET PHONE 3 that he claimed to be his marijuana customer's.  Your Affiant examined those conversations which appeared to contain past conversations regarding the acquisition and sale of drugs.  DIAZ also identified ALEXIS VEGA's telephone number in his phone, saved under the contact "Gallo."  Your Affiant also examined TARGET PHONE 4 and found there were also text messages conversations with ALEXIS VEGA, LOYA-CHAVEZ, and others that contained conversations regarding the acquisition and sale of narcotics. Additionally, both TARGET PHONE 3 and TARGET PHONE 4 had the applications What's app and Cash App saved in the cellphones.  Both applications showed either conversations with suspected sources of supply and or drug customers and transfer of currency in Cash App that appeared to be for the sale of drugs.  Following the interview of DIAZ, your Affiant later processed both TARGET PHONE 3 and TARGET PHONE 4 as evidence and stored them in the LRDO Non-Drug Evidence Vault.  Your Affiant enabled airplane mode on both TARGET PHONE 3 and TARGET PHONE 4 and stored them in protective Mylar packages to prevent them from being remotely erased.

32.     Your Affiant also interviewed AMERICA VEGA, through an interpreter, at the HSPD.  Your Affiant advised AMERICA VEGA her rights per a DEA-13b (Spanish Advise of Rights Form).  AMERICA VEGA stated she understood her rights and agreed to answer agent's

questions without an attorney present.  AMERICA VEGA initially stated she did not know anything about meth distribution but then later stated "they" did not know what they were getting into.  She stated she was directed by DIAZ what to do and that sometimes DIAZ would leave to go to different places without telling her what he was doing. AMERICA VEGA stated that DIAZ communicated with LOYA-CHAVEZ regarding drugs and added LOYA-CHAVEZ is her step-father that lives in Mexico.  AMERICA VEGA stated she knew on at least one occasion when LOYA-CHAVEZ provided both DIAZ and ALEXIS VEGA with meth approximately three to four months ago.

33.     Your Affiant asked AMERICA VEGA consent to search her cellphone (TARGET PHONE 2) per a DEA-88a (Spanish Consent to Search Form) and AMERICA VEGA granted your Affiant consent. AMERICA VEGA also provided passcode "000000" to unlock TARGET PHONE 2.  She also identified telephone number 501-282-7342 as the telephone number assigned to TARGET PHONE 2.  Your Affiant conducted a search of TARGET PHONE 2 and located a text message between her and telephone number 501-276-1297, saved as "Davi," where she directed "Davi" to wire money to LOYA-CHAVEZ in Mexico.  She stated that both ALEXIS VEGA and DIAZ would direct her to also wire money to recipients in Mexico, including LOYA-CHAVEZ.  According to her, DIAZ would provide her with money and was unaware how he earned the money.  DIAZ also told her that the money she was sending to Mexico was for "family."  She stated she would not question where the money came from due to being scared or afraid of going to jail.

34.     Following the interview with AMERICA DIAZ, your Affiant processed TARGET PHONE 2 as evidence and stored it in the LRDO Non-Evidence Drug Vault.  Your Affiant also

enable airplane mode on TARGET PHONE 2 and stored it in Mylar packaging to prevent TARGET PHONE from being remotely erased.

35.     Further, JAIME DIAZ and AMERICA VEGA-HUESO were indicted by a grand jury empaneled in the Western District of Arkansas, for violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846, along with other drug trafficking and firearm offenses.  ALEXIS VEGA-HUESO was indicted by the same grand jury in the same indictment for a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846. *See United States v. Diaz, et al,* No. 6:22CR60037, at Doc. 1 (WD Ark. Sept. 21, 2022).

36.     Based on the above facts, your Affiant states that there is probable cause to believe that evidence of violations of:

- Title 21, United States Code, Section § 841(a)(1) – Distribution of Methamphetamine and Possession with Intent to Distribute Methamphetamine;

- Title 21, United States Code, Section § 846 – Conspiracy to Distribute Methamphetamine and Possession with Intent to Distribute Methamphetamine; and

- Title 18, United States Code, Section 1956(a)(1) – Laundering of Monetary Instruments,

will be found in the electronic devices labeled above as **TARGET PHONE 1, TARGET PHONE 2, TARGET PHONE 3, and TARGET PHONE 4** and described on Attachment A. The type of evidence your Affiant would expect to find includes documents, photographs, videos, financial records, telephone numbers, and communication with other co-conspirators as described in Attachment B to this affidavit.

37.     That the phones are currently stored at the Drug Enforcement Administration (DEA) Little Rock District Office (LRDO), as outlined in paragraph 1 herein above.   This

investigation was conducted concerning criminal acts occurring primarily within the Western District of Arkansas and the subjects have been indicted in the Western District of Arkansas, as outlined in paragraph 35 herein above.  It is the intention of the investigating Special Agents to conduct the search of the subject cellular telephones, should this request be approved by the reviewing Court, at the Hot Springs Police Department, which is located within the Western District of Arkansas.

FURTHER YOUR AFFIANT SAYETH NOT.


By: /s/ Joshua Laster (telephonically)
    Joshua Laster
    Special Agent
    U.S. Drug Enforcement Administration
    Little Rock District Office


Subscribed and sworn to me on this ___ day of October, 2022.


HON. Barry A. Bryant
United States Magistrate Judge
Western District of Arkansas

**ATTACHMENT A**

**Property to Be Searched**

- A black Apple iPhone 11, serial number FFXH36NGN72J, telephone number 501-547-4383 (hereinafter referred to as "**TARGET PHONE 1**") belonging to ALEXIS VEGA-HUESO;

- A silver Apple iPhone 12 Pro Max, serial number F2LG4BZR0D3Y, telephone number 501-282-7342 (hereinafter referred to as "**TARGET PHONE 2**") belonging to AMERICA VEGA-HUESO;

- A red Apple iPhone Xr, serial number DX3G2193KXKQ, telephone number 501-538-0254, (hereinafter referred to as "**TARGET PHONE 3**") belonging to JAIME DIAZ;

- A black Apple iPhone SE, serial number FFMH718NPLJM, no telephone number assigned (hereinafter referred to as "**TARGET PHONE 4**") belonging to JAIME DIAZ.

**ATTACHMENT B**

**Particular Things to be Seized**

There is now being concealed certain property which is evidence of violations of 21 U.S.C. § 846 – Conspiracy to Possess with Intent to Deliver Methamphetamine, 21 U.S.C. § 841(a)(1) – Possession with Intent to Deliver Methamphetamine, and Title 18, U.S.C. § 1956(a)(1) – Laundering of Monetary Instruments. The items to be seized are as follows:

a.  All internet browsing history, as well as telephonic, text, and electronic mail messages between co-conspirators, and other persons, known and unknown, regarding the unlawful acquisition, disposition, and/or transfer of controlled substances; information regarding the payment(s) for the controlled substances; or the acquisition, transfer, or concealment of assets, money, or proceeds by any means;

b.  All bank records, wire transfer records, bank statements, financial records and notes, checks, credit card bills, account information, and other financial records;

c.  Correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when controlled substances were obtained and/or transported, and/or sold;

d.  Any and all address books, telephone records, telephone books, date books, calendars, payment records, and telephone bills and documents and other items reflecting names, addresses, and telephone numbers;

e.  Records of off-site locations to store records or controlled substances, including safe deposit keys, records, receipts, and rental agreements for storage facilities;

f.  Records of mail and communication services;

g. Mementos, including photographs and other historical keepsake items which document the association of co-conspirators, with each other and other suspected associates involved in the receipt and transport of controlled substances;

h. Text messages and other communications stored on the electronic device relating to the receipt and transportation or identification of co-conspirators;

i. Any information related to the sources of controlled substances (including names, addresses, phone numbers, or any other identifying information);

j. Evidence of user attribution showing who used or owned the Target Phones at the time the things described in this warrant were created, edited, deleted, such as logs, phonebooks, photographs, saved usernames and passwords, documents, spreadsheets, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form by whatever means they may have been created and/or stored.